NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HARROLL INGRAM,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2019-1249

---

Petition for review of the Merit Systems Protection Board in No. AT-1221-18-0264-W-1.

---

Decided: June 19, 2019

---

HARROLL INGRAM, Sanford, FL, pro se.

BORISLAV KUSHNIR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOSEPH H. HUNT, LISA LEFANTE DONAHUE, ROBERT EDWARD KIRSCHMAN, JR.

---

Before LOURIE, MOORE, and TARANTO, *Circuit Judges.*

PER CURIAM.

Harrol Ingram appeals the final decision of the Merit Systems Protection Board ("Board") denying Mr. Ingram's request for corrective action related to a letter of reprimand ("LOR") the Army issued to him. For the following reasons, we affirm.

BACKGROUND

Mr. Ingram was employed as a computer engineer at the Army's Program Executive Office Simulation, Training and Instrumentation ("PEO STRI"). On May 24, 2017, Mr. Ingram sent an email from his work email account to all PEO STRI bargaining unit employees to gauge interest in forming a union. Shortly thereafter, the Department of the Army ("Army") suspended Mr. Ingram's network access to determine whether such a message could appropriately be sent from an employee's work email address during duty time. His network access was restored later that day. About the same time his access was suspended, Mr. Ingram left for a week of planned leave and did not sign on to the network again until May 31, 2017. On June 13, 2017, Mr. Ingram sent a second email to all PEO STRI employees, this time from his personal email account. This email stated that, in response to his initial email, PEO STRI leaders had disconnected him from the network, leaving him unable to perform his work duties or reconnect until May 31.

Mr. Ingram's first level supervisor, Vanette Johnson, issued a clarification memorandum to him on June 15, 2017, describing the one hour and thirty-five minute, temporary suspension of Mr. Ingram's email account and clarifying that all emails sent during that period were delivered and available when Mr. Ingram returned from leave. Ms. Johnson's memorandum explained that other employees may request removal from the distribution list and failure to honor that request would be considered a disruption. At least two employees emailed Mr. Ingram

requesting removal from the distribution list: Margaret Talbot-Berard and Jacqueline Hauck.

On July 4, 2017, Mr. Ingram sent a third email to inform all PEO STRI employees that interest in forming a union was low. The next day, Ms. Talbot-Berard and Ms. Hauck again requested removal from the distribution list. Ms. Johnson asked Mr. Ingram to remove Ms. Hauck from the list and to reply to Ms. Hauck acknowledging her removal. Mr. Ingram replied to Ms. Johnson that he feared negative repercussions if he used his work email account for such a reply. Ms. Johnson responded that there would be no negative repercussions and that it was immaterial which email address he used. Mr. Ingram's second level supervisor Jude Tomasello replied, advising that Ms. Johnson would hold him accountable for failure to follow directions. Mr. Ingram responded that he would not acknowledge Ms. Hauck's removal until he consulted with an attorney.

On July 13, 2017, Ms. Johnson issued a counseling memorandum to Mr. Ingram, explaining that his refusal to comply with her directions and to honor Ms. Hauck's request had caused disruption. During a counseling meeting on July 14, 2017, Mr. Ingram did not sign to acknowledge receipt of the memorandum, instead demanding that Ms. Johnson rescind it. According to both Ms. Johnson and a witness, Mr. Ingram stated that Ms. Johnson would not have issued the counseling memorandum if she knew what would happen to her as a result.

On August 9, 2017, Mr. Tomasello issued an LOR to Mr. Ingram, which included charges of (1) insubordination for, among other things, refusal to acknowledge that Ms. Hauck's name had been removed from the distribution list; and (2) making false statements for claiming in the June 13 mass email that his access to the PEO STRI network was suspended until May 31 and that he was unable to perform work duties as a result.

Mr. Ingram filed a complaint with the Office of Special Counsel ("OSC") requesting corrective action, in which he identified three protected activities that he believes contributed to the LOR. In 2009, he challenged a former supervisor's decision to lower his annual performance evaluation, reduce his job duties, and reassign him after complaining of improper procedures for a training event. In 2014, he alleged reprisal based on the 2009 matter. And in 2017, he provided a witness statement in connection with an internal agency investigation of a colleague's allegation of sexual harassment. The same year, Mr. Ingram appealed an allegation that the 2009 and 2014 matters led to various personnel actions, but this appeal was not identified in his complaint filed with OSC.

The administrative judge ("AJ") found that Mr. Ingram engaged in administratively exhausted protected activity for the three events described in his original complaint to OSC but determined that the 2017 appeal was not administratively exhausted and thus not properly before the Board. S.A. 10. He found that Mr. Ingram met his burden to show that the 2014 allegation and 2017 witness statement were contributing factors in the LOR by operation of the statutory knowledge/timing test, but the 2009 matter was not a contributing factor. S.A. 10–11. He found the Army proved by clear and convincing evidence that it would have issued the LOR in the absence of the protected activity. As to insubordination, the AJ found Mr. Ingram's refusal to acknowledge removing Ms. Hauck from the distribution list, despite explicit instructions from both supervisors, warranted the LOR. S.A. 14–17. As to making false statements, he found the statements made in the June 13 email were false. S.A. 13–14.

Mr. Ingram did not petition for review by the full Board, so the AJ's initial decision became final on October 24, 2018, pursuant to 5 C.F.R. § 1201.113. Mr. Ingram timely petitioned this court for review. We have

jurisdiction pursuant to 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must affirm the Board's decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

In this individual right of action appeal, the parties do not dispute the AJ's finding that Mr. Ingram established a prima facie case of reprisal for whistleblowing. S.A. 7–11. "If the employee establishes this prima facie case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure.'" *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed. Cir. 1998) (quoting 5 U.S.C. § 1221(e)(2)). In determining whether the agency has met this "clear and convincing" standard, we consider the *Carr* factors: (1) the strength of the agency's evidence in support of its action, (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

Mr. Ingram challenges the Board's finding that the Army proved its case by clear and convincing evidence. He asserts that the threatening statement he allegedly made to Ms. Johnson during the counseling meeting was uncorroborated. The AJ's finding that the threat occurred is supported by Ms. Johnson's and Ms. Hayes' email summaries of the counseling meeting referencing Mr. Ingram's threat. S.A. 15; S.A. 70–71. Mr. Ingram also argues that Ms.

Johnson assumed without evidence that he had not followed her orders and that Mr. Tomasello based the LOR on Ms. Johnson's assumption. The AJ found that, at the time of the counseling letter, Mr. Ingram had not confirmed with Ms. Johnson and Mr. Tomasello that he would comply with their instructions. The AJ also found Ms. Johnson's and Mr. Tomasello's testimony regarding their actions and motives leading up to the LOR highly credible. S.A. 16–17. This court does not substitute its impression of the facts for that of the AJ. *Jones v. Dep't of Health & Human Servs.*, 834 F.3d 1361, 1366 (Fed. Cir. 2016). We hold that substantial evidence supports the AJ's findings.

Mr. Ingram challenges the AJ's application of the *Carr* factors. For example, he argues under the first and second *Carr* factors that both Ms. Johnson and Mr. Tomasello's actions were based on improper motive and animus. He argues Ms. Johnson was aware of his past complaints and his disclosures to OSC and the Board, had previously told Mr. Tomasello that the supervisor-to-employee trust was nonexistent, and played a dominant role in the development of the LOR. He also argues Mr. Tomasello's goal was to protect Ms. Johnson and that he willfully neglected to investigate Mr. Ingram's request to rescind the counseling letter. Substantial evidence supports the AJ's findings. The AJ found Ms. Johnson and Mr. Tomasello explained their actions as being necessary responses to Mr. Ingram's misconduct. S.A. 16. The AJ also determined that Ms. Johnson's and Mr. Tomasello's patient and consistent testimony about their motives, coupled with Mr. Ingram's decision not to testify at the hearing, demonstrated that the agency officials had no motive to retaliate. S.A. 13–17.

With respect to the third *Carr* factor, Mr. Ingram seems to argue the AJ improperly shifted the burden to him to identify a similarly situated employee who committed similar actions and was treated more favorably. He argues the Army should have, but did not, offer evidence on the third factor. While the AJ does appear to have misstated

the law with regard to who has the burden here, S.A. 13, *Carr* does not require that each of the three factors individually weigh in favor of the agency. *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1374 (Fed. Cir. 2012). Though the absence of evidence regarding similarly situated employees cannot favor the government, *see Siler v. Envt'l Protec. Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018), "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis," *Whitmore*, 680 F.3d at 1374. The lack of evidence on the third *Carr* factor appears neutral, and we hold substantial evidence in the record supports the AJ's finding that the evidence supporting the first two *Carr* factors carries the Army's burden.

Mr. Ingram argues the AJ misapplied the law concerning witness credibility in finding Ms. Johnson's testimony highly credible and well supported by the record. "As an appellate court, we are not in [a] position to re-evaluate these credibility determinations, which are not inherently improbable or discredited by undisputed fact." *Pope v. U.S. Postal Serv.*, 114 F.3d 1144, 1149 (Fed. Cir. 1997).

Finally, Mr. Ingram argues the AJ applied the wrong law with respect to his right to disobey Ms. Johnson's order and his right to due process. These issues were not raised before the Board and are thus waived.

CONCLUSION

The Board's decision denying Mr. Ingram's request for corrective action related to the letter of reprimand is supported by substantial evidence and is not arbitrary, capricious, an abuse of discretion, or contrary to law or regulation. We have considered Mr. Ingram's other arguments and find them unpersuasive. For the foregoing reasons, we affirm.

**AFFIRMED**

Costs

No costs.